**FILED**

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

MAR - 9 2007


CLERK

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |
|---|---|
|  | CIV 04-4215 |
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | |
| Plaintiff, | |
|  | MEMORANDUM OPINION AND |
| RICHELLE DOOLEY and ANGIE GACKE, | ORDER RE: SUMMARY JUDGMENT AND OTHER MOTIONS |
| Plaintiffs - Intervenors, | |
| -vs- | |
| SIOUXLAND ORAL MAXILLOFACIAL SURGERY ASSOCIATES, L.L.P., | |
| Defendant. | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

The Equal Employment Opportunity Commission (EEOC) brought this action under Title VII of the Civil Rights Act of 1964 to correct alleged unlawful employment practices which discriminated on the basis of sex and to provide appropriate relief to Richelle Dooley and Angie Gacke. The EEOC's complaint alleges that Defendant, Siouxland Oral Maxillofacial Surgery Associates, L.L.P., unlawfully terminated Dooley's employment after she advised her superiors she was pregnant, and that Defendant unlawfully refused to hire Gacke after she disclosed during her interview that she was pregnant. This Court granted Dooley and Gacke's motion to intervene in this action. In a Memorandum Opinion and Order dated May 27, 2005, this Court denied Defendant's motion to sever. Doc. 18.

The EEOC and Intervenors filed a joint motion to strike Defendant's Expert, James Carroll. Doc. 65. Defendant filed a motion for sanctions alleging that the joint motion was not substantially justified. Doc. 71. The Court ruled orally at the October 29, 2006, hearing that the motion to strike Defendant's Expert, James Carroll was denied. The Court also ruled orally at the October 29, 2006, hearing that Defendant's motion for sanctions was denied.

Defendant has moved for summary judgment. Doc. 54. Defendant has also moved for

separate trials of the individual claims of discrimination asserted by the EEOC and Intervenors Dooley and Gacke. Doc. 59. The Court will first address the motion for summary judgment. In accordance with the requirements for considering motions for summary judgment, the Court will view the facts in the light most favorable to the non-moving party. *See AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987).

## STATEMENT OF FACTS

Defendant Siouxland Oral & Maxillofacial Surgery Associates, L.L.P. (Defendant) is a medical clinic specializing in oral and maxillofacial surgery, with the largest part of its practice involving the removal of wisdom teeth. During the relevant time period (October 2001- March 2002) Defendant had four male physicians/surgeons and 30 employees, all female, with the exception of one male X-ray technician. Defendant is busiest during the summer months as well as other limited times when high schools and colleges are not in session.

In October of 2000, Defendant moved into a larger facility. When the operation moved into the larger facility, Dr. Akerson became the Managing Partner, Sherena Kost became the Surgical Coordinator and Shelley Hofer became the Administrative Supervisor. Kathleen Fjellestad has been Defendant's Business Manager since 1987. Defendant was unable to hire additional staff prior to the move due to size constraints, so after the move there was a need to hire a large number of people in a short period of time. In October of 2001, Defendant placed an ad for a receptionist/scheduling position.

Intervenor Richelle Dooley (Dooley) first applied for the position of Receptionist/Scheduler in October of 2001, and was interviewed at the time but not hired. Defendant kept Dooley's application on file and when the position was again available in December of 2001, Administrative Coordinator Shelley Hofer sent Dooley a letter dated Decmber 28, 2001, offering her the job. When Dooley called Hofer to accept the offer, Hofer asked Dooley to start work on January 2, 2002. Defendant contends it is standard operating procedure to discuss with an applicant during the initial interview the fact that summer and school vacations are its busiest time, and Hofer testified that she is certain it was discussed with Dooley "[b]ecause we discuss it with everybody." Defendant's Business Manager, Kathleen Fjellestad, has no personal knowledge of the busy time being discussed

in the October 2001 interview. When Dooley was asked during her deposition whether anyone interviewing her for the position with Defendant advised her that Defendant was busiest in the summer or during Christmas holidays, Dooley responded, "No. I don't recall that at all."

On January 2, 2002, Dooley started her new job as a Receptionist/Scheduler working for Defendant. On Dooley's second day of employment, she approached Hofer with some questions regarding her insurance paperwork. Dooley asked Hofer whether her pregnancy was considered a preexisting condition for purposes of insurance. Hofer congratulated Dooley on her pregnancy and the two discussed Dooley's due date. Dooley stated that her due date was the end of July. After learning that Dooley was pregnant, Hofer spoke with Dr. Balaban, a Siouxland partner. According to Hofer's contemporaneous notes made on January 3, 2002, Dr. Balaban asked whether Dooley had disclosed her pregnancy before being hired. Hofer responded, "We can't not hire her due to pregnancy." Hofer testified at her deposition that when she told him of Dooley's pregnancy, Dr. Balaban said something like, "We could hire a temp." Later that day, Hofer told Dooley that Defendant may have to hire a temporary employee during Dooley's maternity leave.

Hofer then informed Dr. Akerson, the Managing Partner, that Dooley was pregnant. Dr. Ackerson also had a conversation regarding Dooley with Siouxland's Business Manager, Kathleen Fjellestad. Fjellestad warned Dr. Akerson that Dooley could not be fired because she was pregnant. Dr. Akerson testified that he responded that he was terminating Dooley's employment because she was not "available in the time period she was hired for, and because she lied." Although he had no direct knowledge of what information was given to Dooley, Dr. Akerson testified that he believed Dooley was informed that she had to be "fully functional and work full time through the summer," and that Dooley lied regarding her availability. Fjellestad maintains, however, that unavailability not dishonesty was the reason Dooley was discharged. Defendant maintains that the training period for a new employee in the receptionist/scheduling position is anywhere from five to nine months,[1] and that Defendant needed to hire an employee who could be trained and available for

---

[1] Representatives of Defendant testified in their depositions that the training period was five to nine months. In her January 22, 2002, letter to the Human Relations Commission Fjellestad advised that the "training period for a new employee to work independently is six months to one year."

3

the summer months.

After Dr. Akerson made the decision to terminate Dooley's employment, Hofer and Fjellestad, informed Dooley on January 3, 2002, that she was being terminated. They advised Dooley she was being terminated because her pregnancy leave would cause her to be off work during Defendant's busy time and that Dr. Akerson said she had to go. Dooley responded by offering to take only a week off to have her baby, but Fjellestad rejected this proposal, saying such a short maternity leave would be unfair to Dooley and the baby. Dooley was told that she would not have been hired if Defendant had known she was pregnant. Additionally, Fjellestad told Dooley that if she was still looking for work after the baby was born, Defendant would hire her if there was an opening. Although Defendant has a policy of retaining applications on file, Dooley was not considered for further openings because she had filed a charge of discrimination against Defendant.

Defendant's written Office Administration and Policy Manual contains an "Extended Medical Leave" policy which provides full-time employees up to sixty days of unpaid leave for a "documented medical problem." The unpaid leave is available to employees who have no sick leave available. According to the administrative supervisor, no employee who has ever requested such leave has been denied the same for any reason. Dr. Akerson testified that Dooley would have been eligible for extended medical leave if she had gotten pregnant after she was hired, and a request for the extended medical leave would not have been denied even if the leave would be taken during the "busy time." Defendant also has a written "Absent Without Pay (AWOP) – Unpaid Leave" policy which allows employees in their first six months of employment to take an extended leave of absence, despite having no accrued leave. There is no provision in this policy that restricts the AWOP leave to times outside the "busy time." However, no employee of Defendant had ever taken an unpaid leave during the first year of her employment or during her training period. "Busy time" depends on the school calendar and can include Summer, Easter, Spring Break, President's Day, Christmas or any time the kids are out of school.

Dooley signed a Charge of Discrimination on January 14, 2002, and filed the same with the Sioux Falls Human Relations Commission. While Dooley's discrimination charge was being processed, Defendant was trying to fill a Central Sterilization and Post-Operative recovery position The ad Defendant placed in the local newspaper in order to fill the position stated, "Training in

4

Medical Technology, Dental Assisting or Surgical Technology desirable."  Gacke holds an Associates Degree in Cardiovascular Technology, and at the time was working on an unscheduled, part-time basis as a cardiovascular ultrasound technician in Aberdeen, South Dakota. Gacke had training in medical technology, and such training was listed as desirable in the ad. After Gacke saw Defendant's ad, she called Sherena Kost, Defendant's Surgical Coordinator to see if Gacke's training fit the description for the advertised position. After Gacke advised Kost of her training during the telephone conversation, Kost set up an interview for Gacke for the next day.

Gacke was interviewed by Kost and two other employees of Defendant on March 11, 2002. After discussing Gacke's job history, the job description of the advertised position and the process of sterilizing equipment, Gacke was given an information packet regarding wages and benefits. Gacke then advised Kost that she was pregnant and asked if that would cause a problem. Kost responded that the pregnancy did cause a problem, that the delivery would be during the busy time, and that Gacke would end up causing more work for everybody else. After Gacke advised that she was pregnant the information packet was taken from her and she was given a tour of the facility. Gacke was also told by an employee of Defendant that Defendant had terminated someone else's employment because of a pregnancy. Gacke was later called and told that she did not get the job.

Gacke did not have any education or work experience in the areas of post-operative recovery, wound care, and sterilization. Gacke had not taken any surgical tech classes, and when asked whether she could handle the invasive care and non-invasive care aspects of the position, Gacke stated that she could not. Defendant contends Gacke was not qualified for the position. However, during or after Gacke's interviw, Kost wrote on Gacke's resume: "Cardio vascular tech 'over qualified' for job." Kost also wrote " 4 months pregnant" on the resume.

Two candidates were offered the position for which Gacke applied. The parties disagree as to when these candidates were interviewed. The EEOC and Intervenors contend these candidates were interviewed on March 12, and March 13, 2002, after Gacke had already been rejected on March 11, 2002. This contention is based on notes on the candidates' resumes. Kost has submitted an affidavit stating that the dates on the resumes refer to the dates the applicants were contacted by telephone. Doc. 88. Fjellestad's October 10, 2002, letter to the Human Relations Commission, however, states, "The applicant hired for this position applied on March 7, 2002 and was interviewed

5

on March 12, 2002."

The Central Sterilization and Post-Operative recovery position was initially offered to a candidate identified as T.K., who turned down the job because she could make more money cleaning houses. Handwritten notes on T.K.'s resume indicate she was interviewed on March 13, 2002. T.K.'s resume discloses that she would be an August 2002 graduate with a degree in Surgical Technology.

The candidate ultimately hired for the Central Sterilization and Post-Operative recovery position was Nicole Reminger. The notes on her resume indicate and Fjellestad's October 10, 2002, letter states she was initially interviewed on March 12, 2002. Reminger was called back for a second interview and extended an offer. She began work on April 1, 2002. Reminger had an AAS in medical assisting, and was employed at the time of her application as a certified medical assistant at a medical clinic.

Defendant recently hired an employee in a Central Sterilization and Post-Operative recovery position who had no medical, dental, surgical, or technical training but whose experience was as a receptionist for Defendant. Kost testified this person was trained on the job, did not work independently and would be required to take a certification exam.[2]

## WHETHER DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON THE CLAIMS RAISED BY THE EEOC AND INTERVENORS?

Principles of Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The

---

[2]Kost submitted an affidavit in which she states that this employee subsequently determined that the position was too difficult, determined not to take the certification test, and left the position. Doc. 88.

6

moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273-74 (8th Cir. 1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Eighth Circuit has observed that "summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based." *Hindman v. Transkrit Corp.*, 145 F.3d 986, 990 (8th Cir.1998), *quoted in Kells v. Sinclair Buick–GMC Truck, Inc.*, 210 F.3d 827, 830 (8th Cir. 2000). However, the Eighth Circuit has noted "there is no 'discrimination case exception' to the application of Fed.R.Civ.P. 56, and it remains a useful pretrial tool to determine whether or not any case, including one alleging discrimination, merits a trial." *Pope v. ESA Services, Inc.*, 406 F.3d 1001, 1006 (8th Cir. 2005) (quoting *Berg v. Norand Corp.*, 169 F.3d 1140, 1144 (8th Cir.1999)).

Pattern and Practice Discrimination Claims

Defendant contends that the EEOC's and Intervenors' claims involve two completely separate and distinct employment decisions and that claims of pattern and practice of discrimination are not applicable in individual, disparate treatment cases. The EEOC and Intervenors have not refuted this argument either in their brief or in argument at the pretrial hearing. In *EEOC v. McDonnell Douglas Corp.*, the Eighth Circuit set forth what must be shown to establish pattern and practice discrimination:

> To establish a *prima facie* case of pattern-or-practice discrimination, a plaintiff must prove that the employer "regularly and purposefully," *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), treated members of the protected group less favorably and that unlawful discrimination was the employer's "regular procedure or policy," *id.* at 360, 97 S.Ct. 1843. "Proving isolated or

7

> sporadic discriminatory acts by the employer is insufficient ... rather it must be established by a preponderance of the evidence that ... 'discrimination was the company's standard operating procedure-the regular rather than the unusual practice.'" *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 875-76, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984), quoting *Teamsters*, 431 U.S. at 336.

191 F.3d 948, 951 (8th Cir. 1999).

The two alleged instances of discrimination presented in this action do not establish a regular procedure or policy to establish pattern-or-practice discrimination. Defendant's motion for summary judgment with regard to the pattern and practice discrimination claims is granted.

Pregnancy Discrimination

Title VII declares it unlawful for an employer to refuse to hire or discharge "or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions or privileges of employment" on the basis of the individual's sex. 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act amended the sex discrimination proscribed by Title VII to include discrimination on the basis of "pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). To prevail on a pregnancy discrimination claim, a plaintiff has the burden to show that she was "treated differently because of her pregnancy" or a pregnancy-related condition. *Deneen v. Northwest Airlines, Inc.* 132 F.3d 431, 435 (8th Cir.1998)(quoting *Geier v. Medtronic, Inc.*, 99 F.3d 238, 241 (7th Cir.1996)).

A plaintiff who claims employment discrimination may survive a motion for summary judgment either by proof of "direct evidence" of discrimination, or by creating the requisite inference of unlawful discrimination through the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See E.E.O.C. v. Trans States Airlines, Inc.*, 462 F.3d 987, 991 -992 (8th Cir. 2006). "'[D]irect evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action.'" *Quick v. Wal-Mart Stores, Inc.*, 441 F.3d 606, 609 (8th Cir.2006) (quoting *Griffith v. City*

8

*of Des Moines*, 387 F.3d 733, 736 (8th Cir.2004)). Direct evidence in employment discrimination cases must be distinguished from stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process. *Quick v. Wal-Mart Stores, Inc.* 441 F.3d at 609. If a plaintiff presents direct evidence of discrimination, the *prima facie* case stage of the McDonnell Douglas test may be avoided because there is no need for the Plaintiff to create an inference of discrimination. *Adams v. Nolan*, 962 F.2d 791, 795n.6 (8th Cir. 1992); *see also, Carney v. Martin Luther Home, Inc.*, 824 F.2d 643, 648 (8th Cir. 1987).

To survive summary judgment under the burden-shifting approach of *McDonnell Douglas,* a plaintiff must establish a *prima facie* case of employment discrimination. *Id.* at 802. If the *prima facie* case is established, the employer may advance a legitimate, nondiscriminatory reason for the employee's discharge. *Id.* The burden of production then returns to the plaintiff to show that the employer's reason is a pretext for pregnancy discrimination. *Id.* at 804. Although Defendant in its brief analyzed Plaintiffs' claims under the *McDonnell Douglas* burden-shifting framework, Plaintiffs claim that they have presented direct evidence of discrimination.

Disparate Treatment (Dooley)

The Court finds that in Dooley's case there is direct evidence of pregnancy discrimination. Dooley was fired shortly after Dr. Akerson was advised that she was pregnant. Dooley was told that she would not have been hired if Defendant had known of her pregnancy. Even when Dooley offered to take only one week of maternity leave, the termination decision was left intact. Dr. Akerson testified in his deposition that "because she was pregnant, and was going to have a baby in July, was obviously -- and planned to take six to eight weeks off . . . I informed my partners, and we made a decision to discharge her, because, one, she was not going to be available, and, two, she had lied." The communications regarding Dooley's pregnancy "were made contemporaneously and directly in connection with the adverse employment decision." *See Deneen v. Northwest Airlines, Inc.*, 132 F.3d 431, 436 (8th Cir. 1998). Defendant's motion for summary judgment is denied on Dooley's claim based on direct evidence of pregnancy discrimination.

In addition, Defendant's motion for summary judgment on Dooley's claim should be denied under the *McDonnell Douglas* analysis. To establish a *prima facie* case of intentional discrimination, a plaintiff must show the following: (1) membership in a protected group; (2) the

employee/applicant was qualified for or was meeting the legitimate expectations of the employer; (3) an adverse employment action; and (4) the adverse action occurred in circumstances that give rise to an inference of unlawful discrimination. *See Riser v. Target Corp.*, 458 F.3d 817, 819-820 (8th Cir. 2006).

Defendant contends that Dooley, as an "individual acknowledging a need for six to eight weeks off, a significant portion of which was expected during this crucial time for which they had been hired, was not able to meet this 'legitimate expectation' of the employer." Although Defendant has claimed that is has a policy prohibiting an employee from taking leave during its "busy time," particularly during an employee's first year of employment, Defendant has failed to produce a written policy to support its claim. Also, Defendant's Extended Medical Leave Policy and Absent Without Pay policies have no exclusions for the "busy time." Also, the Absent Without Pay policy allows employees in their first six months of employment to take an extended leave of absence, despite having no leave accrued. Dooley has thus presented evidence that she was treated differently than similarly situated employees or applicants[3], and has presented a *prima facie* case of intentional discrimination.

Defendant presents as a legitimate, nondiscriminatory reason for Dooley's termination that she was not going to be available when Defendant needed her to be available, and would be unavailable to work during the time Defendant was training her. Dooley may now "carry her

---

[3] 29 C.F.R. § 1604.10(b) provides in part:
Disabilities caused or contributed to by pregnancy, childbirth, or related medical conditions, for all job-related purposes, <u>shall be treated the same as disabilities caused or contributed to by other medical conditions</u>, under any health or disability insurance or sick leave plan available in connection with employment. Written or unwritten employment policies and practices involving matters such as the commencement and duration of leave, the availability of extensions, the accrual of seniority and other benefits and privileges, reinstatement, and payment under any health or disability insurance or sick leave plan, formal or informal, shall be applied to disability due to pregnancy, childbirth or related medical conditions on the same terms and conditions as they are applied to other disabilities.
(Emphasis added).
The Court is not persuaded that Dooley, who offered to take one week of maternity leave, is similarly situated to an applicant who wanted a leave of absence during the summer months to attend soccer camp.

ultimate burden of persuasion by demonstrating that the legitimate nondiscriminatory reason proffered by [Defendant] was not the true reason for the adverse employment action, but is merely a pretext for discrimination." *Adams v. Nolan,* 962 F.2d 791, 795 (8th Cir.1992)(quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). A plaintiff " may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256.

The fact that Defendant's Extended Medical Leave Policy and Absent Without Pay policies have no exclusions for the "busy time" is evidence of pretext. In addition, Dr. Akerson's testimony that if an employee got pregnant after she was hired and was unavailable during the busy time, Defendant would "just eat it,"undermines the assertion that an employee would not be hired who would be unavailable during the busy time. Although the Court is not placing itself in the position of the employer in determining the training time required of a receptionist, the training period of six months to one year (as set forth in Fjellestad's January 22, 2002, correspondence to Human Relations) appears to be long, and is somewhat inconsistent with the six to nine months period set forth in Fjellestad's January 3, 2002, administrative notes. Defendant's later submitted additional reason for terminating Dooley for being untruthful about her future absence is also evidence of pretext especially given the questionable evidence supporting the assertion that Dooley was untruthful during the interview process[4] and given the fact that at an earlier time an employee who falsified records by making up blood pressure readings was not terminated. [5]

Disparate Treatment (Gacke)

The Court also finds in Gacke's case that there is direct evidence of pregnancy discrimination. The writing of "4 months pregnant" on Gacke's application is evidence that

---

[4] Dooley was first interviewed for the receptionist position on October 22, 2001, but did not get the position. Dooley was then offered the position "immediately" in a letter dated December 28, 2001. Her due date was July 28, 2002.

[5] A common way to show pretext is with evidence that other similarly situated individuals who were not in the plaintiff's protected class engaged in the same conduct but were treated differently. *See Russell v. City of Kansas City, Missouri,* 414 F.3d 863, 868 (8th Cir. 2005) *Harvey v. Anheuser-Busch, Inc.,* 38 F.3d 968, 972 (8th Cir.1994).

pregnancy was a factor considered in declining to hire her. When Gacke advised Kost that she was pregnant and asked if that would cause a problem, Kost responded that the pregnancy did cause a problem, and the information packet regarding benefits was then taken from Gacke. In Gacke's case, as well as Dooley's case, the communications regarding Dooley's pregnancy "were made contemporaneously and directly in connection with the adverse employment decision." *See Deneen v. Northwest Airlines, Inc.*, 132 F.3d at 436. Defendant's motion for summary judgment on Gacke's case is also denied based on direct evidence of pregnancy discrimination.

Defendant's motion for summary judgment on Gacke's claim should also be denied under the *McDonnell Douglas* analysis. Defendant contends there are no genuine issues of material fact as to whether Gacke was qualified for the central sterilization/recovery position because of Gacke's lack of education and experience in invasive procedures, post-operative recovery, wound care and sterilization.[6] However, the position advertisement stated, "Training in Medical Technology, Dental Assisting or Surgical Technology desirable," and Gacke had an Associates Degree and experience in Cardiovascular Technology. Kost set up an interview for Gacke after a telephone call in which Gacke discussed her training with Kost. In addition, the notes from the March 11, 2002, interview which are on Gacke's resume state "Cardio vascular tech 'over qualified' for job." Also, Defendant subsequently placed one its receptionists who had no medical, dental, surgical, or technical training in a Central Sterilization and Post-Operative recovery position. Genuine issues of material fact exist as to whether Gacke was qualified for the central sterilization/recovery position and Gacke has established a *prima facie* case of intentional discrimination.

Defendant's proffer of a legitimate, non-discriminatory reason that Gacke was not hired is that the applicants to whom the position was offered were more qualified. Gacke contends that this reason is a pretext for discrimination. Gacke contends that the decision to not hire her was made before these applicants were interviewed. Fjellestad's October 10, 2002, letter and notes on these applicants' resumes support this contention. Genuine issues of material fact exist with regard to

---

[6]Defendant's handbook lists the following Education/experience requirements for the position of Central Sterilization and Post-Anesthesia recovery Assistant: "Employees must have training or background in surgical tray preparation, sterilization techniques, surgical instrument handling, and training or background in infection control procedures. Employees must also have training in monitoring of post-anesthesia surgical patient."

pretext, and summary judgment is not appropriate in Gacke's case.

## WHETHER DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON THE CLAIMS FOR PUNITIVE DAMAGES?

Defendant contends that it is entitled to summary judgment on Plaintiffs' claims for punitive damages. An award of punitive damages is allowed under Title VII if the defendant committed illegal discrimination "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). The Supreme Court has held that "an employer's conduct need not be independently 'egregious' to satisfy § 1981a's requirements for a punitive damages award." *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 546 (1999). The terms "malice" and "reckless" within the context of 42 U.S.C. § 1981a(b)(1), ultimately focus on the employer's state of mind. *Kolstad*, 527 U.S. at 535. An "employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." *Kolstad*, 527 U.S. at 536. Reckless indifference may be imputed to the employer if an employee commits a discriminatory act while serving in a managerial capacity and acts within the scope of employment. *Id.* at 543; *Walsh v. National Computer Systems, Inc.*, 332 F.3d 1150, 1161 (8th Cir. 2003).

Defendant maintains that it has taken measures to prevent and discourage workplace discrimination by maintaining a written policy prohibiting discrimination, and providing anti-discrimination and anti-harassment training for its managers. Plaintiffs contend that Defendant's sexual harassment policy pertains only to employees, not applicants, and does not address pregnancy discrimination, and that Defendant's "Equal Employment Opportunity Statement" does not include pregnancy as a protected category. Also, Plaintiffs maintain that Defendant had an unwritten policy against hiring pregnant women, and even if written anti-discrimination policies were in effect, where an employer discriminates in contravention of its own policies, these written policies do not shield the employer from punitive damages. *See MacGregor v. Mallinckrodt*, 373 F.3d 923, 931 (8th Cir. 2004).

Defendant contends punitive damages are not proper because it "was simply making good-faith business decisions regarding Dooley and Gacke, as the clinic desires to hire individuals that are available to work during the necessary times, and individuals that are most qualified for their respective positions." Whether this is true or whether Defendant intentionally discriminated against

Dooley and Gacke is a matter the jury must decide at trial. There are indications in the record of evidence[7] which may support a finding that Defendant "discriminate[d] in the face of a perceived risk that its actions [would] violate federal law." *See Kolstad*, 527 U.S. at 536. Since the evidence presented by Defendant does not conclusively establish that it can have no liability for punitive damages, the Court will reserve ruling on the punitive damages issue until trial. *See Ferris v. First Nat'l of Nebraska*, 2006 WL 1720488 (D. Neb. June 20, 2006). The Court will, as it indicated at the pretrial conference, allow Plaintiffs to present evidence in support of punitive damages, except evidence of financial worth may not be presented unless and until the Court rules that the issue of punitive damages goes to the jury.

## DEFENDANT'S MOTION FOR SEPARATE TRIALS

Defendant has moved pursuant to FED. R. CIV. P. 42(b)[8], for separate trials of the individual claims of discrimination asserted by Plaintiff EEOC and Intervenors Dooley and Gacke. Doc. 59. Defendant contends that since this is not a pattern or practice gender discrimination case, separate trials of the individual claims of discrimination asserted by the EEOC and Intervenors is appropriate pursuant to Fed. R. Civ. P. 42(b). Although this is not a pattern or practice case, separate trials would not be in furtherance of convenience and would not be conducive to expedition and economy. There are common questions of law and overlapping relevant facts, *e.g*, Defendant's history and policies. The motion for separate trials is denied.

Accordingly,

---

[7]Some of the evidence relied upon by Plaintiffs in support of their request for punitive damages is testimony of Fjellestad and Dr. Akerson that Defendant would not rehire Dooley because she filed a charge of discrimination, and Dr. Akerson's testimony that he thought "it would be wrong-headed for any sort of the law, when you have an ongoing legal entanglement going on, to expect any reasonable person to hire that person back."

[8]FED. R. CIV. P. 42(b) provides:
  The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

IT IS ORDERED:

1. That in accordance with the Court's oral order of October 29, 2006, Plaintiffs' Joint Motion to Strike Designation of Expert Witness James Carroll (Doc. 68) is denied;
2. That in accordance with the Court's oral order of October 29, 2006, Defendant's Motion for Sanctions (Doc. 71) is denied;
3. That Defendant's Motion for Summary Judgment (Doc.54) is granted with regard to Plaintiffs' pattern and practice discrimination claims;
4. That Defendant's Motion for Summary Judgment (Doc.54) is denied with regard to the disparate treatment claims of the EEOC, Dooley and Gacke;
5. That the Court is reserve ruling on the punitive damages issue until trial, and Plaintiffs will be allowed at trial to present evidence in support of punitive damages, except evidence of financial worth may not be presented unless and until the Court rules that the issue of punitive damages goes to the jury; and
6. That the motion for separate trials (Doc. 59) is denied.

Dated this 9th day of March, 2007.

BY THE COURT:

Lawrence L. Piersol
Unites States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: _Sharon Knudson_
(SEAL)        DEPUTY

15